# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Conrad Robert Schultz,

                Petitioner,      Case No. 19-cv-12972

v.                          Judith E. Levy
                               United States District Judge

Sherman Campbell,

                Respondent.

_____/

# OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS [1] AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Conrad Robert Schultz filed a habeas corpus petition, through counsel, under 28 U.S.C. § 2254. He challenges his convictions of four counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(a) and (b), and three counts of second-degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1)(a) and (b). He raises six claims for relief.

For the reasons set forth below, the petition for a writ of habeas corpus is denied. The Court also denies a certificate of appealability.

## I.   Factual Background

Petitioner was convicted following a jury trial in the Wayne County Circuit Court.[1] The Michigan Court of Appeals summarizes the conviction as follows: "Defendant's convictions arose out of allegations that he sexually abused his adopted son over a period of approximately five years. The complainant testified that the abuse began when he was in the fourth or fifth grade." *People v. Schultz*, No. 09–018124–FC, 2012 WL 1192191, at *1 (Apr. 10, 2012).

The record shows that Petitioner's sexual abuse of his adopted son, RS,[2] took place from the fall of 2003 or 2004, to February 2009, at Petitioner's family home in Woodhaven, Michigan. (ECF No. 7-7, PageID.118; ECF No. 7-8, PageID.999–1005, 1038, 1060, 1235.) RS and his brother CS were small children when Petitioner and his wife, Roberta Schultz, adopted them. (ECF No. 7-8, PageID.998–999.)

At trial, RS testified that Petitioner sexually abused him, stating: "he fondled me. He sucked my penis. He took pictures and he anally raped

---

[1] Petitioner's first trial ended in a mistrial due to a hung jury.

[2] Because the victim was a minor at the time of the offense, the Court will refer to him by his initials only to preserve his privacy. *See* Fed. R. Civ. P. 5.2(a). The Court will do the same with several witnesses who were minors at the time of trial.

me." (ECF No. 7-8, PageID.999.) RS testified that these events happened "more than one time," (*id.* at PageID.1000), and that "after a while [the incidents] kind of all run together." (*Id.* at PageID.1001.)

At the time of the first incident, RS's brother was sleeping in another room and Roberta was not home. (*Id.* at PageID.1001.) During the incident, RS asked Petitioner, "what are you doing?" Petitioner responded, "[c]alm down, calm down, don't worry about it." (*Id.* at PageID.1002.) After the first incident, Petitioner sent RS to bed. Twenty minutes later, Petitioner called RS back, and RS testified that Petitioner "was like, forget, forget I ever did what I just did and stuff. He said, 'Forget it ever happened.'" (*Id.* at PageID.1003.)

RS testified that he did not tell anyone about the first incident because, "I was confused. . . I was like confused and I wanted to think it never happened." (*Id.* at PageID.1004.) RS confronted Petitioner in the following days, and RS testified that Petitioner "just looked at [RS] and said, 'forget that ever happened.'" (*Id.* at PageID.1006.) About a week later, Petitioner sexually abused RS again. After that, the incidents continued with regularity. (*Id.* at PageID.1007.) RS testified regarding the frequency of abuse: "[Petitioner] did it whenever he got a chance,

3

whenever my mom was out of the house or whenever we were alone or whenever he just felt like it." (*Id*.) He testified that the abuse occurred at least two times per month, sometimes more often. (*Id*. at PageID.1011.)

RS' trial testimony provided details regarding several incidents of sexual abuse, including molestation and oral rape. (*See, e.g., id*. at PageID.1010.) He testified that Petitioner would "say things like [']you owe me this and it's not a big deal and it can be a secret.[']" (*Id*.) RS testified that he told Petitioner to stop abusing him. But when he did, Petitioner would "get mad and that's when he would say the stuff like, [']oh, you owe me this, or it's not a big deal, or he'd say things like you like it and stuff.[']" (*Id*. at PageID.1010–1011.)

On approximately October 17, 2008, Petitioner's abuse escalated. He anally raped RS. (*Id*. at PageID.1011.) Before the rape, Petitioner had confiscated RS' iPod and watch. (*Id*. at PageID.1014.) Petitioner offered to return RS' belongings if RS would "let" Petitioner rape him. (*Id*. at PageID.1015.) RS testified that Petitioner's tactic in this regard was "kind of blackmailing." (*Id*. at PageID.1016.) After that, more incidents of rape occurred. Petitioner continued the tactic of withholding items

belonging to RS (such as his Playstation) and refused to give them back unless RS "let" Petitioner rape him. (*Id*. at PageID.1021–1022.)

RS did not tell Petitioner's wife Roberta about these incidents because, he testified, "I didn't trust her. I didn't know what she would do. I didn't know if she would say something to him and he would just deny it and it would get worse because he would now know that I told somebody and be afraid." (*Id*. at PageID.1024.)

When RS was in ninth grade, after the sexual abuse including rape had been occurring for years, he told his friend SS what was happening. (*Id*. at PageID.1036.) RS told SS that Petitioner was sexually abusing him. (*Id*. at PageID.1038, 1042.) RS's friend EA overheard RS and SS whispering, and RS told EA about the abuse, too. (*Id*. at PageID.1040, 1042.) SS and EA informed various adults about the abuse. (ECF No. 7-7, PageID.866.) SS set up a meeting for himself, RS, and a youth minister, Nathan Zimmerman. RS refused to tell Zimmerman about the abuse, but SS told Zimmerman the information he knew. (*Id*. at PageID.922–924, 937–938; ECF No. 7-8, PageID.992, 995.) EA told her mother, a bus driver at the children's school, about the abuse. (ECF No. 7-7, PageID.878, 948.) EA's mother talked with RS about the abuse. RS told

her that it had been occurring for five years. SS, Zimmerman, and EA's mother told RS they would contact the authorities about the sexual abuse unless RS reported it himself. (ECF No. 7-7, PageID.871, 925, 950–955; ECF No. 7-8, PageID.987–991.)

The following weekend, RS had an argument with Petitioner and Roberta. RS decided at that point to go to the police and report the abuse. He warned his parents, "I hope you like surprises." (ECF No. 7-8, PageID.1051–1052, 1126, 1220.) On the following Monday, RS talked to ES' mother. ES' mother then contacted the school counselor and Child Protective Services (CPS). (ECF No. 7-7, PageID.869–870, 953–954, ECF No. 7-8, PageID.1054.) The police interviewed RS on March 4, 2009. (ECF No. 7-8, PageID.1055.)

At Petitioner's trial, Roberta testified that she first learned of RS' allegations when the police told her about them. She questioned whether the allegations were truthful or if RS was "trying to pull something." (ECF No. 7-9, PageID.1319). Later that day, Roberta asked Petitioner if any part of the allegations were true. (*Id.* at PageID.1271.) Petitioner admitted that he "fondled [RS] and sucked on [RS'] penis." (*Id.*) Petitioner denied "penetrat[ing] [RS] anally." (*Id.* at PageID.1271–1272.) Roberta

6

spoke with the police again later that night and spoke to CPS the next day, but she did not tell anyone about Petitioner's admission until she was under an investigative subpoena on June 22, 2009. (*Id.* at PageID.1279–1280.) Roberta stated that the reasons she did not tell anyone about Petitioner's admissions were that no one asked her if he'd admitted anything, and she preferred to let the police handle the investigation. (*Id.,* PageID.1279–1280, 1285–1286, 1295–1297.)

Dr. Deena Nazer examined RS on April 15, 2009. (ECF No. 7-7, PageID.827, 831.) RS informed Dr. Nazer that the sexual abuse began when he was in fifth grade. (*Id.* at PageID.830.) RS also told Dr. Nazer that Petitioner had anally penetrated him with his penis. (*Id.*) RS told Dr. Nazer that Petitioner offered him an iPod and wristwatch in exchange for sexual acts. (*Id.*). When Dr. Nazer conducted an anal genital examination of RS, she did not observe any injury. Dr. Nazer testified that she was not surprised that she did not find evidence of physical injury for several reasons, including the length of time that had passed since the last anal rape. She also testified that the occurrence of injury in boys suffering from anal penetration is "rare" because, while the anus can tear or bruise, it can heal more quickly than other parts of the body,

7

sometimes as quickly as three days later. (*Id.* at PageID.832–837.) Dr. Nazer testified that she was aware of several studies on anal-genital healing in children and explained the scope of those studies and their findings. Dr. Nazer explained that only a small percent of boys who disclose anal penetration have a visible or lasting physical injury. Dr. Nazer also testified that it was "very common" for a child sexual assault victim to delay disclosure of sexual abuse—in RS's case, for five years. (*Id.* at PageID.837–839.)

## II.   Procedural Background

Petitioner was originally tried in March 2010. This trial resulted in a mistrial when the jury could not reach a verdict. (ECF No. 1, PageID.18.) Petitioner was retried and the jury unanimously convicted Petitioner of all counts. (ECF No. 7-11, PageID.1626–1627.) Petitioner appealed as of right and was represented on appeal by the same firm that handled his trial.

Petitioner raised four issues on direct appeal: (1) the trial court erred by not allowing Petitioner discovery access to the prosecutor's interview notes with the complainant and other witnesses and erred by failing to hold an in-camera review of the interview notes; (2) the trial

court erred by excluding any reference to the complainant's prior acts of untruthfulness; (3) the trial court erred by giving highly prejudicial and inappropriate instructions and comments to the jury regarding consent not being an issue in the case; and (4) the trial court erred by allowing the state to amend the information after the close of proofs to extend the timeframe of the alleged incidents. (*See* ECF No. 7-19, PageID.2659.)

The Michigan Court of Appeals affirmed the jury's verdict. (*See* ECF No. 7-19, PageID.2770–2776.) The Michigan Supreme Court denied leave to hear the case. *People v. Schultz*, No. 299654, 2012 WL 1192191 (Mich. Ct. App. Apr. 10, 2012); *lv. den.* 492 Mich. 869 (2012).

After his unsuccessful direct appeal, Petitioner hired new counsel and filed a post-conviction motion for relief from judgment. (*See* ECF No. 7-16, PageID.1821.) In it, he raised the following issues. First, he argued that his trial counsel was ineffective because: (a) she failed to object to the testimony of Dr. Nazer on the grounds that it was inadmissible and prejudicial; (b) she failed to cross-examine Dr. Nazer on her expert opinions regarding injury and delayed reporting of sexual abuse; (c) she failed to call an expert witness to rebut Dr. Nazer's opinions; (d) she should have called Petitioner as a witness in his own defense; (e) she

9

failed to object to the prosecutor's alleged misconduct, including when he shifted the burden of proof to Petitioner and commented on Petitioner's failure to testify; (f) she failed to call certain fact witnesses that would have helped Petitioner's case; (g) she failed to preserve Petitioner's objections to the trial court's rulings, which limited the scope of cross-examination of RS to eliminate references to certain incidents of untruthfulness; (h) she improperly inflamed the jury when she conducted a "demonstration" of RS's anal rape. (*Id.* at PageID.1825–1835.) Second, Petitioner argued that post-conviction relief was appropriate because he had ineffective assistance of appellate counsel in his direct appeal because his appellate counsel was the same as his allegedly ineffective trial counsel. (*Id.* at PageID.1835–1838.) Third, Petitioner argued that the prosecutor engaged in misconduct by shifting the burden of proof and by improperly using Petitioner's decision not to testify on his own behalf against him. (*Id.* at PageID.1838–1840.)

The trial court denied Petitioner's post-conviction motion. *People v. Schultz*, No. 09-018124-01-FC (Wayne County Circuit Court, Nov. 25, 2014) (ECF No. 1-5, PageID.102–113). Petitioner sought leave to appeal with the Michigan Court of Appeals, which the court denied. *People v.*

10

*Schultz,* No. 325174 (Mich. Ct. App. May 4, 2015). Petitioner then sought leave to appeal to the Michigan Supreme Court. He also asked the Michigan Supreme Court to remand his ineffective assistance of counsel claims to the trial court for an evidentiary hearing pursuant to *People v. Ginther*, 390 Mich. 436 (1973).

The Michigan Supreme Court granted Petitioner's request in part, stating:

> On order of the Court, the motion to remand and the application for leave to appeal the May 4, 2015 order of the Court of Appeals are considered. The motion to remand is GRANTED in part. Pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we VACATE that part of the November 25, 2014 judgment of the Wayne Circuit Court addressing the defendant's claim of ineffective assistance of counsel. We REMAND this case to the Wayne Circuit Court for an evidentiary hearing pursuant to *People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922 (1973), to determine whether the defendant was deprived of his right to the effective assistance of counsel based on the assertions made in the affidavit of Keeley Heath, the second chair at the defendant's trial, regarding the performance of the defendant's lead counsel. In all other respects, leave to appeal is DENIED, because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).

*People v. Schultz*, 500 Mich. 955 (2017).

11

On remand, the trial court conducted a *Ginther* hearing on Petitioner's ineffective assistance of counsel claims based on the assertions made in second-chair trial counsel Keeley Heath's affidavit.[3] Heath's affidavit states that Petitioner's first-chair trial counsel Lisa Satawa: (1) spent almost no time reviewing the transcripts from the first mistrial or other hearings; (2) had not "source[d]" her cross-examination questions to the prior testimony and did not, for the most part, prepare any cross-examination questions ahead of time; (3) was unable to locate witness' prior statements during the trial when she believed that the prior statements could impeach the witness; (4) created "delays while she fruitlessly searched for prior statements," which caused the defense to lose credibility with the jury; (5) offended the jury when, during the cross-examination of RS regarding logistics of the anal rape, counsel "got down on her knees and pretended to be the [Petitioner] while she pretended to hold the hips of an 'invisible' [RS] and acted out a thrusting motion as if [Petitioner] were thrusting his penis into [RS]'s anus;" (6) failed to create

---

[3] For context, Petitioner was represented by counsel Mark Satawa in his first trial, which ended in a mistrial. Mr. Satawa's wife, Lisa Satawa, acted as Petitioner's counsel in the re-trial that resulted in conviction. Heath worked at the Satawas' firm. By her own admission, she had "very little participation" in the first trial and in its preparation; rather, she was second-chair counsel in the re-trial only. (ECF No. 7-25, PageID.3864.)

a record of an unexpected incident in the courtroom during the trial, when a prisoner tried to escape from the courtroom, which left Petitioner trampled on the floor, bloody, "clearly shaken and visibly hurt;" (7) failed to seek an adjournment after this courtroom incident to allow Petitioner to recover from his injuries and compose himself so he could prepare to testify the following day; (8) failed to spend "any time with [Petitioner] preparing him to testify" other than a meeting held on the same day as his planned testimony, wherein counsel advised Petitioner not to testify. (ECF No. 1-6, PageID.116–118.)

The trial court held the *Ginther* hearing, which lasted over three days. (*See* ECF No. 7-18, PageID.2055–2178; ECF No. 7-18, PageID.2179–2226; ECF No. 7-18, PageID.2227–2587.) At the hearing, the trial judge heard testimony only on those specific claims that the Michigan Supreme Court remanded. The court refused to hear testimony concerning Petitioner's other ineffective assistance of counsel claims contained in his post-conviction motion because the Michigan Supreme Court had not remanded the case for a hearing on any of those claims. The trial court stated: "The question was whether [Petitioner's trial] attorney Satawa failed to provide competent representation . . .  And

whether the defendant has shown, or did show, that this deficient performance prejudiced the defendant,…that is, whether this defendant was deprived of his right to a fair trial[.]" (ECF No. 7-25, PageID.3861.)

During the trial court's *Ginther* proceeding, Petitioner filed a motion asking the Michigan Supreme Court to clarify its remand order. Petitioner alleged that the trial court was improperly limiting the hearing "to only some of the appellant's claims of ineffective assistance of counsel." (ECF No. 7-22, PageID.3080). The Michigan Supreme Court denied Petitioner's motion in a summary order. *People v. Schultz*, 902 N.W.2d 892 (2017) (mem.).

On February 12, 2018, before the trial court issued its post-*Ginther* hearing ruling, Petitioner filed a successive motion for relief from judgment with the trial court. The motion "re-raise[d]" the same ineffective-assistance claims set forth in the first post-conviction motion with some additional supporting authority. (ECF No. 7-12, PageID.1642.) Petitioner argued his successive motion should be considered because one of his several claims was now supported by retroactive changes in Michigan law that occurred after the first motion was filed. (*Id.* at PageID.1639.) Petitioner had already raised this retroactivity claim in

14

the Michigan Supreme Court when he appealed the denial of his first motion for relief from judgment, which resulted in the partial remand. (ECF No. 7-22, PageID.3027.) The Michigan Supreme Court had declined to include that issue in its remand. Petitioner also argued that the trial court "erroneously interpreted the Order on remand to mean that the Michigan Supreme Court limited the *Ginther* hearing . . . ." (ECF No. 7-12, PageID.1656.)

On March 23, 2018, the trial court issued an order denying the ineffective assistance claims and denying Petitioner's February 12, 2018 motion. *People v. Schultz*, No. 09-018124-01-FC (Wayne County Circuit Court, Mar. 23, 2018) (ECF No. 1-10, PageID.137); *People v. Schultz*, No. 09-018124-01-FC (Wayne County Circuit Court, Mar. 23, 2018) (ECF No. 1-11, PageID.139–142). (ECF No. 7-18, PageID.2195–2225.) The court held, as to the ineffective assistance claims on remand, that Petitioner "failed to show, any errors, or any alleged errors, by Ms. Satawa, were so serious as to . . . deprive him of a fair trial. The defendant has simply failed in that requirement." (ECF No. 7-25, PageID.3862.)

Petitioner sought leave to appeal, which the Michigan Court of Appeals denied in two separate orders. In the first order, the Michigan

15

Court of Appeals denied leave, finding that Petitioner "failed to establish that the trial court erred in denying the motion for relief from judgment after remand." *People v. Schultz,* No. 343323 (Mich. Ct. App. Dec. 12, 2018). In the second order, the Michigan Court of Appeals denied leave, finding that Petitioner "failed to demonstrate the entitlement to an application of any of the exceptions to the general rule that a movant may not appeal the denial of a successive motion for relief from judgment." *People v. Schultz,* No. 343322 (Mich. Ct. App. Dec. 12, 2018) (citing Mich. Ct. R. 6.502(G)).

Petitioner sought leave to appeal to the Michigan Supreme Court, which likewise denied both of Petitioner's applications in two orders that mirrored the justifications of the Michigan Court of Appeals. *People v. Schultz*, 504 Mich. 944 (2019) (denying relief regarding first motion because Petitioner failed to show that he was entitled to relief from judgment under Mich. Ct. R. 6.508(D)); *People v. Schultz*, 504 Mich. 944 (2019) (deeming Petitioner's second motion for relief from judgment prohibited under Mich. Ct. R. 6.502(G)).

Here, Petitioner seeks a writ of habeas corpus on the following grounds:

16

1. Petitioner received ineffective assistance of trial counsel in violation of his rights under the Sixth Amendment of the United States Constitution because his trial counsel committed serious and prejudicial errors in his representation of the Petitioner, which a competent criminal defense attorney would not have made. These errors prejudiced Petitioner and resulted in an unreliable verdict. In particular, Petitioner argues that his trial counsel:

   a. Failed to cross-examine the prosecutor's expert with scientific evidence that would have called into question her opinions;

   b. Failed to call any expert witnesses who would have aided the defense and undermined the opinions of the prosecution's expert;

   c. Failed to object on the basis of prosecutorial misconduct when the prosecutor commented on Petitioner's silence and shifted the burden of proof;

   d. Failed to call defense witnesses who were subpoenaed and would have testified about RS' credibility;

   e. Failed to adequately prepare for cross-examination of witnesses, and this failure harmed Petitioner's defense;

   f. Performed a demonstration of the alleged anal intercourse, which inflamed the jury, was harmful, and was unrelated to any defense strategy;

2. Because the state courts denied a full hearing on all of Petitioner's claims of ineffective assistance of counsel, Petitioner is entitled to an evidentiary hearing in federal court to allow him to prove his allegations of ineffective assistance of counsel;

17

3. The prosecutor committed misconduct, resulting in denial of Petitioner's right to a fair trial and due process under the Fifth, Sixth, and Fourteenth Amendments. Specifically, the prosecutor committed misconduct when he improperly shifted the burden of proof by commenting on Petitioner's failure to testify, and used Petitioner's Fifth Amendment right to remain silent against him during the prosecutor's closing argument;

4. The trial court failed to hold an *in camera* review which prevented discovery of the prosecutor's notes from interviews with RS and other witnesses. This failure violated Petitioner's due process rights and his right of confrontation under the Fifth, Sixth, and Fourteenth Amendments.

5. The trial court judge failed to disqualify himself before presiding over an evidentiary hearing where two witnesses who testified once shared an office space with the judge. This violated Petitioner's Fifth Amendment Right to Due Process.

6. The Petitioner received ineffective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments because appellate counsel was the same as trial counsel and trial counsel committed serious and prejudicial errors in her representation. A competent criminal appellate attorney would not have made these errors, which resulted in prejudice. Appellate counsel's errors consisted of the failure to raise meritorious appellate issues, including ineffective assistance of counsel as to trial counsel's deficient performance, and misconduct of the prosecutor.

(*See* ECF No. 1.)

18

## II. Standard of Review

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who raise claims previously adjudicated by state courts must "show that the relevant state-court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted). Ultimately, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Additionally, a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. Discussion

Some, but not all, of Petitioner's habeas claims are barred due to the doctrine of procedural default. The only claim that Petitioner raised in his direct appeal that is also included in his habeas petition is his habeas claim 4: that the trial court erred by not allowing the Petitioner discovery of the prosecutor's interview notes with the complainant and other witnesses and erred by failing to hold an in-camera review of the interview notes. Claim 4 is not procedurally defaulted. However, Claim 4 still fails, for the reasons more fully explained below.

In addition to claim 4, the Court finds that two other claims are not barred by procedural default. These claims are two of Petitioner's six ineffective assistance of counsel claims, specifically, claim 1(e) (that counsel failed to adequately prepare for cross-examination of witnesses)

and claim 1(f) (that counsel's demonstration of anal rape inflamed the jury). Despite the fact that procedural default does not bar these two claims, they still fail for the reasons set forth below.

The remainder of Petitioner's claims are barred because the doctrine of procedural default applies. Accordingly, and as more fully explained below, all of Petitioner's habeas claims are denied either because they are barred by procedural default or because they lack merit.

## A. Procedurally Defaulted Claims

The Court will first address the claims that are barred because of the doctrine of procedural default. They are the following:

Claim 1(a): Petitioner's trial counsel was ineffective for failing to cross examine the prosecutor's expert with scientific evidence that would have called into question her opinions;

Claim 1(b): Petitioner's trial counsel was ineffective for failing to call any expert witnesses who would have aided the defense and undermined the opinions of the prosecution's expert;

Claim 1(c): Petitioner's trial counsel was ineffective for failing to object on the basis of prosecutorial misconduct when the prosecutor commented on Petitioner's silence and shifted the burden of proof;

Claim 1(d): Petitioner's trial counsel was ineffective for failing to call a defense witness who was subpoenaed and would have testified about RS' credibility;

Claim 2: Petitioner is entitled to a full evidentiary hearing in federal court on his ineffective assistance of counsel claims, because the state court denied Petitioner's request as to certain claims;

Claim 3: The prosecutor committed misconduct by improperly shifting the burden of proof and commenting on Petitioner's failure to testify and using Petitioner's right to remain silent against him;

Claim 5: The trial court judge failed to disqualify himself before presiding over an evidentiary hearing where two witnesses who testified once shared an office space with the judge; and

Claim 6: Petitioner's appellate counsel was ineffective because his appellate counsel was the same as his trial counsel, who committed serious prejudicial errors at trial.

### 1. Legal Standard

"A petitioner procedurally defaults claims for habeas relief if the petitioner has not presented those claims to the state courts in accordance with the state's procedural rules." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1991)). Thus, if a petitioner fails to present a claim in state court, the "procedural default carries over to federal court and precludes habeas review of that claim in federal court." *Id*. The procedural default rule applies when "the last state court rendering a judgment in the case . . .

based its judgment on the procedural default." *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Accordingly, the analysis "is two-fold: the federal court must determine if a petitioner failed to comply with a state procedural rule; and it also must analyze whether the state court based its decision on the state procedural rule." *Id*. In Michigan, the relevant state procedural rule is Michigan Court Rule 6.508(D)(3) and its requirement that a defendant show cause and prejudice for failing to raise the claim on direct appeal.

Michigan Court Rule 6.508(D)(3) provides that a court "may not grant [post-conviction] relief to [a] defendant if the motion for relief . . ." "alleges grounds for relief . . . which could have been raised on direct appeal," absent a showing of "good cause for the failure to raise such grounds" previously, and "actual prejudice" resulting therefrom. If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue.[4] *Smith v. Murray*, 477 U.S. 527, 533 (1986).

---

[4]    In an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479–80 (1986). To be credible, a claim of innocence requires a petitioner to support the allegations of constitutional

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst*, 501 U.S. at 803.

## 2. Analysis

Petitioner raised claims 1(a)–(d), 2, 3, 5, and 6 in his post-conviction motions, but did not raise them on direct appeal. The Michigan Court of Appeals rejected Petitioner's initial post-conviction appeal on the ground that Petitioner failed to establish that he was entitled to relief under

---

error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). Petitioner has not presented any new or reliable evidence to support an assertion of innocence. He does, however, maintain that he did not "repeatedly rape" RS, but this is not the same as presenting evidence to support an assertion of actual innocence. (*See* ECF No. 12, PageID.4700.) Accordingly, this exception is inapplicable.

24

Mich. Ct. R. 6.508(D). *People v. Schultz,* No. 325174 (Mich. Ct. App. May 4, 2015) (ECF No. 7-20, PageID.2777). With the exception of the ineffective assistance of counsel claims which the Michigan Supreme Court remanded back to the trial court for a *Ginther* hearing, which will be addressed separately below, the Michigan Supreme Court rejected the remainder of Petitioner's post-conviction claims pursuant to Michigan Court Rule 6.508(D).[5] *People v. Schultz*, 500 Mich. 955 (2017).

---

[5] Petitioner argues throughout his brief that, when the Michigan Supreme Court initially remanded the case to the trial court for a *Ginther* hearing, the hearing was to be on all of the ineffective assistance of trial counsel claims. Counsel argues that the trial court erred in refusing to conduct an evidentiary hearing on what make up the first four ineffective assistance of counsel subclaims (claims 1(a)–(d)) in the petition. Petitioner argues that because these ineffective assistance of counsel claims were never adjudicated again on remand, the claims cannot be considered defaulted pursuant to Michigan Court Rule 6.508(D)(3) because the trial court as such never ruled on the claims after remand, much less deny them pursuant to Michigan Court Rule 6.508(D)(3).

This Court cannot accept Petitioner's argument. Under Michigan law, **Error! Main Document Only.**when "an appellate court remands a case with specific instructions, it is improper for a lower court to exceed the scope of the order." *People v. Traver*, 328 Mich. App. 418, 426 (2019), *appeal denied*, 505 Mich. 975 (2020) (quoting *People v. Russell*, 297 Mich. App. 707, 714 (2012)). Where an appellate court remands a case to a trial court for a *Ginther* hearing on specific ineffective assistance of counsel claims, the trial court on remand is limited to conducting a hearing only on those ineffective assistance of counsel claims that the appellate court remanded to the trial court for a *Ginther* hearing. *Id.* at 427. In this case, the Michigan Supreme Court clearly remanded the case to the trial court for an evidentiary hearing only on those ineffective assistance of counsel claims alleged in Ms. Heath's affidavit. (ECF 1-7, PageID.120). The Michigan Supreme Court denied leave to appeal on the other claims. Petitioner's remaining ineffective assistance of trial counsel claims were

Following remand, the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that the defendant failed to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D). *People v. Schultz*, 504 Mich. 944 (2019). The Michigan Court of Appeals denied Petitioner's post-conviction appeal in a form order "because the defendant has failed to establish that the trial court erred in denying the motion for relief from judgment after remand." *People v. Schultz,* No. 343323 (Mich. Ct. App. Sept. 12, 2018) (ECF No. 7-25, PageID.3372). These orders, however, did not refer to subsection (D)(3) nor did they mention Petitioner's failure to raise his claims on his direct appeal as their rationale for rejecting his post-conviction appeals. Because the form orders in this case are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claims. *Id.*

---

clearly procedurally defaulted when the judge rejected these claims pursuant to Michigan Court Rule 6.508(D)(3) in the initial opinion denying post-conviction relief.

The trial judge, in denying Petitioner's initial post-conviction motion, ruled that Petitioner was not entitled to post-conviction relief because he failed to show good cause and actual prejudice, as required by Michigan Court Rule 6.508(D)(3)(a), for not raising these claims in his appeal of right. (ECF No. 1-5, PageID.112–113). Because the trial court judge denied Petitioner post-conviction relief based on the procedural grounds stated in Michigan Court Rule 6.508(D)(3), Petitioner's claims set forth above are procedurally defaulted pursuant to Michigan Court Rule 6.508(D)(3). *See Ivory v. Jackson,* 509 F.3d 284, 292–93 (6th Cir. 2007); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).

The fact that the trial judge also discussed some of the merits of Petitioner's claims in his initial opinion and order denying post-conviction relief in addition to invoking the provisions of Michigan Court Rule 6.508(D)(3) to reject Petitioner's claims in the initial post-conviction motion, does not alter this analysis. *See Alvarez v. Straub,* 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999). A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it

27

also expressed views on the merits. *McBee v. Abramajtys,* 929 F.2d 264, 267 (6th Cir. 1991).

With respect to his ineffective assistance of trial counsel claims, Petitioner argues that any procedural default should be excused because he was represented on his appeal of right by the same attorney who was his trial counsel. In *Duyst v. Rapelje*, 483 F. App'x 36 (6th Cir. 2012), the Sixth Circuit noted that: "This Circuit has never squarely determined whether having the same counsel at trial and on appeal constitutes cause excusing procedural default of an ineffectiveness claim." *Id.,* at 45, n. 3. In *Whiting v. Burt,* 395 F.3d 602 (6th Cir. 2005), the Sixth Circuit suggested that, although the fact that the attorney who represented the petitioner on his appeal had also been his trial attorney might serve as cause to excuse the petitioner's failure to raise an ineffective assistance of trial counsel claim on the appeal of right, the petitioner would still be required to show prejudice before the procedural default could be excused. *Id.* at 621.

Although the fact that trial counsel was also Petitioner's appellate counsel might establish cause for her failing to raise the ineffective assistance of trial counsel claims on the direct appeal, there is no caselaw

28

suggesting it would excuse Petitioner's failure to raise the prosecutorial misconduct and judicial bias claims on direct appeal. Moreover, Petitioner is unable to show that he was actually prejudiced, so as to excuse the procedural default for any of the claims.

Petitioner has not shown that appellate counsel was ineffective. It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent."

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751–52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by

omitting the claims that Petitioner raised for the first time in his post-conviction motion for relief from judgment. Appellate counsel was retained by Petitioner to represent him on his appeal of right. (ECF No. 7-19, PageID.2596–2597). Petitioner's appellate counsel filed a forty-three-page appellate brief which raised four claims.[6] Petitioner has not shown that appellate counsel's strategy in presenting these claims and not raising other claims was deficient or unreasonable. Moreover, because Petitioner has not demonstrated that the defaulted claims are not "dead bang winners," he has failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano,* 228 F.3d 674, 682–83 (6th Cir. 2000).

Accordingly, Petitioner has not argued that there is good cause to excuse his default. Because Petitioner has not demonstrated any cause for his procedural default, it is unnecessary for the Court to reach the prejudice issue.[7] *Smith*, 477 U.S. at 533.

---

[6] *See* Defendant-Appellant's Brief on Appeal, ECF No. 7-19, PageID.2658–2709.

[7] Petitioner's reply brief argues that this Court should ignore the default issue because it is not a jurisdictional bar to habeas relief. **Error! Main Document Only.**Petitioner is correct that procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212,

Accordingly, Petitioner is not entitled to habeas relief on claims 1(a)–(d), 2, 3, 5, and 6 pursuant to Michigan Court Rule 6.508(D)(3).

## B. Non-Defaulted Claims: 1(e), 1(f), and 4

### 1. Claims 1(e) and 1(f)

Claim 1(e) (that counsel failed to adequately prepare for cross-examination of witnesses) and claim 1(f) (that counsel's demonstration of anal rape inflamed the jury) are not procedurally defaulted. As described above, the trial judge, on remand, conducted a *Ginther* hearing on the ineffective assistance of counsel claims alleged in Ms. Heath's affidavit, which encompassed these claims. The judge denied the claims on the merits without invoking Michigan Court Rule 6.508(D)(3) or the cause and prejudice standard. (ECF No. 7-18, PageID.2195–2225). This was the last reasoned decision on these claims. Accordingly, they are not defaulted. The Court therefore moves on to the merits of these claims.

### a. Legal Standard

---

215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "However, where a straightforward analysis of settled state procedural default law is possible, federal courts cannot justify bypassing the procedural default issue." *Sheffield v. Burt*, 731 F. App'x 438, 441 (6th Cir. 2018). This Court will not bypass a clear procedural default.

A habeas petitioner must satisfy a two-prong test to establish that he was denied the effective assistance of counsel. First, a petitioner must demonstrate that counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. A defendant must overcome the presumption that, under the circumstances, the challenged action or inaction might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the petitioner must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

The Court notes that on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable– a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough*, 541 U.S. at 664).

Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never

an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

In reviewing a claim under the AEDPA's deferential standard of review, this Court must review "the last state court to issue a reasoned opinion on the issue." *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010) (quoting *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005)).

### b. Analysis

The Michigan Court of Appeals and the Michigan Supreme Court both denied Petitioner's post-conviction application for leave to appeal following the remand in unexplained one-sentence orders. Accordingly, this Court must "look through" these decisions to the Wayne County Circuit Court opinion denying the motion for relief from judgment after remand, which was the last state court to issue a reasoned opinion. Then, the Court can decide whether that court's adjudication of Petitioner's ineffective assistance of trial counsel claims was "contrary to," or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See Hamilton v. Jackson*, 416 F. App'x 501, 505 (6th Cir. 2011).

Petitioner first alleges that trial counsel was unprepared to conduct his second trial after taking the case over from her husband, who represented Petitioner at the first trial, which ended in a hung jury. Petitioner argues that trial counsel was unable to effectively cross-examine several witnesses because of this lack of preparation. The trial court judge rejected this claim with a lengthy finding:

> With respect to the first issue, that being whether Miss Satawa did not review the transcripts of prior record, of prior proceedings, including the prior trial transcript, and therefore, was unprepared, or—and or did not source, or index, and or cross examination, and or failed to prepare cross-examination questions; this Court finds that attorney Heath was, in fact, a second chair, in the first trial, where Mr. Satawa was the lead attorney, which involved these same charges.

> And the Court does accept, as a fact, that Mr. Satawa and the attorney at issue in this matter, Lisa Satawa, were husband and wife, and law partners.

> The Court notes that Ms. Heath had a limited role, in the trial, and preparation for trial, in the first trial, and apparently, she met Mr. Schultz on time before trial, in that matter.

> The Court finds, as a fact, that for the second trial, the – the the trial at issue, that Ms. Heath agreed to participate in the trial at issue, to gain more experience for herself, by assisting attorney Lisa Satawa.

36

The Court finds, as a fact, that Ms. Heath had very little participation in the pre-trial matters, and or trial preparation, before the actual trial.

Further, that Ms., Ms. Heath did not have any specific role, or assignment, and that she did not observe Ms. Satawa, Ms. Satawa's trial preparation.

Among other things, Miss Heath stated that Miss Satawa did not seem prepared; and or not always able to find transcript testimony; and or that she worked to write some of – or parts of her cross examination, during breaks in the trial.

The Court does not find that Ms. Satawa failed to adequately prepare for trial cross examination, and this Court will address that issue, subsequently.

The Court notes, as a fact, that Miss Heath could not cite any specific instances where attorney Satawa failed to impeach, from any inconsistent statement, any witness.

That Ms. Heath did not cite any specific incident, incident, or circumstance, where other testimony would have been useful to cross examination – to cross-examine any witness so as to provide evidence of deficient representation.

Ms. Heath cited no issues presented, or cross-examination subjects, that were missed by attorney Satawa.

The Court does not find that there was any failure to cross-examination – to cross-examine any witness, from any prior inconsistent statement.

The record does show, and the Court does find, as a fact, that Ms. Satawa made her own cross examination notes, and cross-

references to prior court proceedings, prior to the trial, and utilized those in cross-examining, and examining witnesses during this trial.

The Court finds that Miss Satawa created a chart, indicating prior testimony, and page numbers, regarding the witnesses

The Court rec – finds and recognizes that inevitably, while cross-examining any witness, where prior testimony exists, there is always an inevitable delay, to some extent, in cross-examining those witnesses.

And that the record does not show any evidence where there was an – a delay, suggesting ineffective representation.

The Court finds that, among – that among Ms. Satawa's pre-trial preparation, she reviewed notes, and examination notes, cross-examination notes, of the preceding attorney, Mark Satawa.

She prepared her own notes.

She annotated transcripts, as did the defendant.

She spoke with, and strategized with her husband, Mark Satawa, in preparation for the trial she was to lead.

The Court finds that Lisa Satawa did speak to the defendant, reviewed the discovery, including, but not limited to, all statements, and testimony.

And again, she prepared her own cross-examination questions.

The Court finds, as a fact, that all of the above were present, and utilized, coun – by counsel, during trial.

(ECF No. 7-18, PageID.2204–2208).

A habeas petitioner cannot show deficient performance or prejudice resulting from counsel's failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material to his defense. *See Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002). Petitioner cannot prevail on his claim that trial counsel was ineffective for failing to adequately prepare the case or conduct an adequate investigation because he has failed to show how additional pretrial work counsel had allegedly been deficient in performing would have been beneficial to his defense. *See Martin v. Mitchell,* 280 F.3d 594, 607–08 (6th Cir. 2002).

Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002) (Friedman, J.). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel because in retrospect better tactics may have been available." *Id*.

The trial court judge reasonably rejected Petitioner's claim. Ms. Heath was unable to point to any specific questions that trial counsel

failed to ask or any specific line of impeachment that counsel failed to pursue. Defense counsel did not perform ineffectively in her cross-examination of the witnesses, particularly when the effect of further cross-examination is entirely speculative on Petitioner's part. *See Jackson v. Bradshaw,* 681 F.3d 753, 764–65 (6th Cir. 2012).

Petitioner's claim 1(f) alleges that trial counsel was ineffective for doing a physical demonstration of the anal rape in front of the jury when questioning RS.

The trial judge rejected this claim as follows:

With respect to the second subject raised in the Affidavit of Ms. Heath. That is, what I will call, the physical demonstration, regarding anal rape.

This Court does find, based on the testimony, that Ms. Satawa did make some gesture, involving an invisible, or simulated victim, on the victim's body.

However, frankly, the record is not particularly clear on this subject.

The subject really does cause this Court to speculate, as to exactly what occurred, and, and counsel did not have a clear recollection of that occurrence.

The Court has read the parties' theories, about why the demonstration may have been objectively reasonable, in the context of the case, as submitted by the People.

40

Or may have been something that the jury found unnecessary, or distasteful, as asserted by Ms. Heath, and counsel for Mr. Schultz.

The fact is, however, in this Court's judgment, that the issue of what happened, or what was alleged to have happened was known to the jury, including the physical acts that go along with the crime.

The Court does find, as a fact, that under the circumstances of this case, and given the nature of the crimes alleged, that counsel's demonstration cannot be construed as deficient, as there is no evidence, or reason to conclude, that this demonstration deprived the defendant of a fair trial, or was prejudicial in any way, towards the defendant.

(ECF No. 7-18, PageID.2208–2209).

The trial judge's decision was reasonable, which precludes habeas relief. Petitioner's current counsel does not cite to any caselaw which would support Petitioner's claim that counsel's physical demonstration of a sexual assault while questioning RS was deficient. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Because RS had already provided detailed testimony concerning the sexual assaults and Petitioner had admitted that he had committed sexual abuse against RS, the trial judge reasonably concluded that counsel was not ineffective because of her physical demonstration of the anal rape. *See e.g. Bible v. Stephens,* 640

F. App'x 350, 357–58 (5th Cir. 2016) (state habeas court's rejection of the petitioner's claim that his trial counsel performed deficiently by failing to object to prosecutors' in-court reenactment of defendant's sexual assault of a victim was not contrary to, nor an unreasonable application of, federal law, on federal habeas review of the petitioner's capital murder conviction, where the petitioner had confessed to attacking victim, the victim provided detailed testimony that adequately allowed jurors to understand the violence and brutality associated with the sexual assault, and the reenactment was superfluous and came before jurors in the midst of a highly prejudicial punishment phase). Petitioner is not entitled to relief on his ineffective assistance of counsel claims and, accordingly, claims 1(e) and 1(f) are denied.

## 2. Claim 4

Petitioner, in claim 4, argues that the trial judge erred in refusing his discovery request for production of the prosecutor's notes of interviews with RS and his brother CS, or in the alternative, conducting an *in camera* review of the notes to determine if they contained anything relevant.

The Michigan Court of Appeals rejected the claim, agreeing with the trial court that the prosecutor's interview notes were protected work product and were not subject to discovery. *People v. Schultz*, 2012 WL 1192191, at *1–2.

It is well-settled that there is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (denying due process claim of a defendant who was convicted with aid of surprise testimony from an accomplice who was an undercover agent); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir.1988) (citing *Weatherford*). A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle,* 291 F.3d 416, 441 (6th Cir. 2002). Petitioner would not be entitled to habeas relief simply because the prosecutor violated Michigan Court Rule 6.201 or other Michigan rules regarding discovery.

The Michigan Court of Appeals ruled that Petitioner was not entitled to discovery of the prosecutor's interview notes because they were protected work product. This is a reasonable decision that defeats Petitioner's habeas claim. *See Byrd v. Collins*, 209 F.3d 486, 515 (6th Cir.

43

2000) (it was not unreasonable for Ohio courts to forbid a petitioner's access, even via *in camera* review, to the prosecutor's work product notes of conversations with informants when the petitioner, in his postconviction proceedings, had made no credible showing that those documents would contain information indicating that witness had lied or cut a deal with the prosecutor, as petitioner claimed). Accordingly, Petitioner is not entitled to relief on claim 4.

## IV.   Conclusion

The Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability to Petitioner. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the

district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Dell v. Straub,* 194 F. Supp. 2d at 659.

## V.   Order

Based upon the foregoing, **IT IS ORDERED** that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

45

**IT IS FURTHER ORDERED** that a Certificate of Appealability is

**DENIED.**

IT IS SO ORDERED.

Dated: March 30, 2023                    s/Judith E. Levy
     Ann Arbor, Michigan                JUDITH E. LEVY
                                  United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 30, 2023.

                                  s/William Barkholz
                                  WILLIAM BARKHOLZ
                                  Case Manager